## McDevitt's Estate.

*Husband and wife—Common law marriage—Recognition by decedent of claimant as wife in deeds.*

Where the origin of the relationship between claimant and decedent was meretricious, the fact that he thereafter accepted a conveyance of land in which she was described as his wife, and subsequently joined her in executing a deed, in which she was so described, raises a presumption that the nature of the relationship had been changed by marriage; but such presumption is rebuttable, and where their subsequent conduct indicated that no marriage, either by ceremony or by agreement to live together as man and wife, had ever taken place, the claim that the woman was his wife at the time of his death cannot be sustained.

Exceptions to adjudication. O. C. Phila. Co., April T., 1923, No. 1533.

*James B. Anderson, Jr.*, and *George J. Edwards, Jr.*, for exceptant.

*Joseph M. Smith*, contra.

THOMPSON, J., Nov. 2, 1923.—At the audit of the account of the administrator of the estate of James McDevitt, deceased, a claim was presented by Mary Frances McDevitt for (according to the appearance slip of her counsel) "her share of the estate as common law wife of decedent."

The auditing judge found that the claimant was not the wife of decedent and rejected her claim.

Upon exceptions filed thereto, it was argued that the auditing judge did not give proper consideration to the effect of a deed for premises No. 1317 South Broadway, Camden, N. J., taken in the name of the decedent and claimant as his wife, and subsequently sold and conveyed by them by deed, in which they are described as "James McDevitt and Mary Frances, his wife," in that, no matter what their relations were prior thereto, the deeds show a "changed relation" from that time on. The deeds, standing alone, would seem to indicate that claimant and decedent were man and wife, for they so expressed themselves in writing; but this may not be true in fact, and we are of opinion that the effect to be given the deeds in question depends upon the relation of the parties before and after that time. This requires an examination of the testimony taken at the audit, which we have done carefully, and from the same the following appears:

Decedent died in September, 1922. In the year 1898 he was a rug weaver and claimant was employed in the same mill. During that year they went to live together under the promise of decedent that he would marry her, which claimant testifies he never did, although repeatedly asked by her so to do. Shortly after 1898, decedent ceased to be a rug weaver and devoted his time to gambling, which he continued down to his death. For nine years prior to his death he had apartments on Eleventh Street below Chestnut Street, in this city, where he lived at times with a woman by the name of Palmer, and where he conducted his business as a bookmaker; and for one year prior to his death he lived with his sister in Frankford, leaving her house two weeks before his death to live with another woman by the name of Pike, on Girard Avenue west of Twelfth Street. Decedent for some years prior to his death also maintained a room at a hotel near Seventh and Chestnut Streets. Claimant in 1898, when she went to live with the decedent, was about twenty-five years of age and the mother of two illegitimate children (not by the decedent), although he knew of that fact. At the various places at which claimant says she lived with decedent since 1898, she admits that he was not at said places all of the time, giving as a reason therefor that his business required him to be at race tracks at times. Doubtless decedent did go at times to race

tracks, but they are not open all the year and the location of them is not stated, whether in the vicinity of this city or elsewhere. The fact that he had a bookmaking establishment on Eleventh Street for nine years and a room at a hotel near Seventh and Chestnut Streets, where claimant says she could get in touch with him at any time, indicates that decedent lived in the city all the time of his relations with claimant, with temporary visits to race tracks in this vicinity when open; even then he doubtless returned in the evening. In 1918 decedent purchased the fixtures and good-will of a rooming-house on Fifteenth Street below Locust Street for claimant, which she conducted for about two years. Claimant insists that decedent lived with her there, but admits he was there only "a couple of nights a week." The testimony shows also that decedent's father and mother and sister visited claimant and decedent, but what the father and mother thought of their relations does not appear; but the sister testifies positively that decedent said to her he was not married to the claimant.

The deeds upon which claimant relies as showing a "changed relation" referred to No. 1317 South Broadway, Camden, N. J., purchased in August, 1910, in the names of James McDevitt and Mary Frances, his wife, and sold by them in 1914. The circumstances connected with the purchase of this property are not revealed by the testimony, and we are not informed as to what knowledge the claimant had, if any, that her name was inserted as one of the grantees in the deed of purchase; but, it being there, it necessarily required her signature to convey when the property was sold. The evidence also does not disclose why decedent caused the claimant's name to be inserted in the deed as his wife, when he had persistently refused to marry her, and claimant says he never did marry her. They were not living together at the time of his death, and had not been for more than two years prior thereto; claimant was living on Spruce Street above Fifty-fifth Street and decedent with his sister in Frankford, and at the time of his death with a woman on Girard Avenue west of Twelfth Street. There is no evidence of an agreement to live apart, nor was their so living the result of strained relations between them, as claimant admits most intimate personal relations with decedent two months before his death. The contention that the deeds in question proved a "changed relation" is not borne out by the facts subsequent thereto. Decedent doubtless contributed to the support of claimant, although there is no evidence that he paid her anything for the nearly two years she was conducting a rooming-house on her own account. They do not seem to have had a fixed, joint abode for the last four years prior to his death, and his visits to her during that time were infrequent and occasional. The few letters passing between them since 1918 do not disclose the name wife or husband in any of them.

There was also the testimony of one witness that decedent introduced claimant as his wife and that he introduced her to a bank where she opened an account in the name of Mary Frances McDevitt. This testimony falls far short of proving that a marriage in fact existed, in view of the actual relations and conduct of the parties as described in the testimony hereinbefore referred to. Introductions of this character may often rashly be resorted to in the stimulus of circumstances suddenly and unexpectedly arising, for the purpose of deceiving others and gratifying one of the parties to the alleged marriage, where there exists in fact no basis for the introduction. As said in Bicking's Appeal, 2 Brewst, 222, cited in Craig's Estate, 273 Pa. 530, 534: "A man may live with his kept mistress in such a way as to create a kind of repute of marriage among some persons; he may even, to gratify her, allow

3 D. & C.

himself to be held out, and hold himself out to her friends and acquaintances, as her husband; may be a constant visitor, sleep and often eat at her house; may recognize the fruit of the connection as his children, and manifest affection and tenderness towards them; yet the evidence may fall short of that which ought to satisfy the mind that there was an actual agreement to form the lawful relation of husband and wife. The conduct of the parties must be such that almost any one acquainted with them would naturally infer that they bore that relation to each other."

In Stevenson's Estate, 272 Pa. 291, real estate was bought and sold in the names of the parties as husband and wife; the claimant was introduced as decedent's wife; he set her up in business; they registered at hotels as man and wife; he wrote her as Mrs. Stevenson, but in the body of the letter did not use the words "husband" or "wife" (a significant fact in the case at bar). In addition, there was the positive evidence of the claimant of an agreement of marriage stated in the present tense. The court, however, refused to find there was a marriage. See, also, Craig's Estate, 273 Pa. 530.

A reading of the entire testimony convinces us that claimant was not the wife of decedent; consequently, the auditing judge was correct in his ruling that she is not entitled to any part of his estate.

All exceptions filed by claimant to the rulings of the auditing judge are, therefore, dismissed, and the adjudication is confirmed absolutely.